UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 09-23144-CIV-GOLD/MCALILEY

PODHURST ORSECK, P.A.,

        Plaintiff,

vs.

SERVICIOS LEGALES DE MESOAMERICA
S. DE R.L., *et al.*

        Claimants.

_____/

**OMNIBUS ORDER ADDRESSING FIRST PHASE OF INTERPLEADER;
GRANTING MOTION FOR PRELIMINARY INJUNCTION [DE 10]; DISMISSING
DISINTERESTED STAKEHOLDER FROM ACTION; GRANTING MOTION TO
TRANSFER [DE 47]; SETTING DEADLINE TO FILE MOTION FOR FEES & COSTS**

**I.      Introduction**

        THIS CAUSE is before the Court upon Interpleader Plaintiff Podhurst Orseck P.A.'s

("Podhurst") Amended Complaint **[DE 5]** and Motion for Preliminary Injunction **[DE 10]**, as

well as various motions filed by the claimants requesting, among other things, a transfer

of this action to the United States District Court for the Southern District of Texas pursuant

to 28 U.S.C. § 1404(a).  *See e.g.,* **[DE 24]; [DE 25]; [DE 47]; [DE 57]; [DE 58]; [DE 67];

[DE 70]; [DE 73]; [DE 80]; [DE 91]; [DE 94]; [DE 96]**.  While many of the claimants

oppose Podhurst's motion for preliminary injunction, none challenge this Court's subject-

matter jurisdiction to rule upon the first phase of this interpleader action.  Nor do they

oppose the adjudication of their ownership rights in the interpleaded funds – i.e., the

second phase of this action – in the appropriate federal forum, although there is

disagreement as to whether the appropriate forum is the Southern District Florida or the

Southern District of Texas.[1]  *Id.; see also* **[Tr. Mar. 17, 2010 at 05:28 p.m. – 5:59 p.m.]**.

Having considered the relevant submissions, the applicable law, and the arguments of the parties as presented at the February 2, 2010 and March 17, 2010 hearings, I conclude that the federal statutory interpleader requirements are met, that interpleader is appropriate given the facts of circumstances of this case, and that I therefore have subject-matter jurisdiction over Podhurst's statutory interpleader claim pursuant to 28 U.S.C. § 1335.  I also grant Podhurst's motion for a Section 2361 injunction.  Further, because Podhurst is a disinterested stakeholder, I dismiss Podhurst from this action subject to its right to seek reasonable attorneys' fees and costs incurred in connection with the first phase of this interpleader action.  Finally, having considered the factors applicable to Section 1404(a) motions, I agree that this case should be transferred to the Southern District of Texas in the interests of justice.

## II.    Background

This is an interpleader action that was initiated by Podhurst, a Florida resident, against various claimants, many of whom are not residents of Florida, due to the existence of competing claims to a portion of attorneys' fees from the settlement of cases arising out

---

[1] I note that Mr. Marshall Louis, Esq., counsel for claimants David Kukhalashvili, Tamara Taliashvili, James Vititoe, and Masry and Vititoe indicated at oral argument that his Russian clients would object to a transfer to the extent it would subject them to jurisdiction in Texas as to matters other than determining ownership of the res at issue.  As is set forth in more detail below, the only claim that will be transferred is the statutory interpleader claim, which simply encompasses a determination as to the ownership of the interpleaded funds, and will not require the Texas district court to adjudicate the rights of David Kukhalashvili and Tamara Taliashvili beyond any claim of ownership they might have to the interpleaded funds.  The other counts will be dismissed without prejudice as moot.  Curiously, claimant Newton Schwartz, who was the first claimant to request a transfer to Texas, *see* **[DE 24]**, also expressed some hesitation at oral argument regarding a transfer to Texas.  However, when specifically questioned by this Court as to his position regarding a transfer to the Southern District of Texas, he stated: "we will do either place."  **[Tr. Mar. 17, 2010 at 05:47 p.m.]**.

of the crash of Siberia Airlines Flight 778 ("Siber Air crash").

Specifically, on July 9, 2006, Flight 778 crashed in Irkutsk, Russia.  Certain of the injured passengers and decedents' estates retained various law firms and attorneys, which included Podhurst, Servicios Legales De Mesoamerica S. De R.L. ("SLM"), James Vititoe an attorney at Masry & Vititoe, a Professional Corporation ("Masry & Vititoe"), and the Branch Law Firm LLP ("Branch Law Firm").  SLM also entered into an agreement with two Russian attorneys, David Kukhalashvili and Tamara Taliashvili, to receive a portion of the total attorney's fees received by SLM and associated U.S. law firms as a result of any recovery obtained in the Siber Air actions.  The various law firms also agreed how the attorney's fees were to be split amongst the firms.  Podhurst was responsible for litigating the Siber Air actions in New York Federal Court and for negotiating any settlements. Masry and Vititoe (and, in certain cases, the Branch Law Firm) and SLM were responsible for communicating with clients and obtaining medical records/reports, employment and income verifications, photographs, and other damage information. David Kukhalashvili and Tamara Taliashvili were responsible for advising as to Russian law, communicating with clients, obtaining court approvals and assisting all U.S. counsel with respects to all Russian aspects of the case.

Ultimately, after extensive discussions in London with the various insurers, Podhurst was successful in negotiating settlement offers, which were accepted by the clients. Court approval of these settlements in Russia has been and/or will be obtained in every case. In addition, after the cases were settled, the clients in the Siber Air Actions signed closing statements that disclosed all information regarding the settlements, including the attorneys' fee arrangements as well as the specific dollar amount of the disbursements to Podhurst,

3

SLM, Massry & Vititoe, and David Kukhalashvili; these closing statements were allegedly approved by the clients and all counsel.  Because several claimants have come forward claiming to be due certain monies from SLM's portion of attorneys' fees, Podhurst filed the instant interpleader action, asking the court to direct the competing claimants to set forth their claims to the res at issue.  Specifically, an individual who had some relationship with SLM by the name of Wilfrido Garcia purported to assign, finance, sell and/or enter into a series of financial agreements with these other claimants who include Newton B. Schwartz, Benton Musslewhite, Hoey & Morgan, Baker, and the Law Funder LLC.

With respect to claimant United States, Podhurst received Notices of Levy from the United States for collection of money owed to a taxpayer. The first Notice, attached as Exhibit 1 to the Amended Complaint **[DE 5]**, listed the taxpayer as "Wilfredo R & Mary Garcia."  Because the levy did not include funds due to SLM, Podhurst responded to the McAllen, Texas IRS office and stated that it did not owe any funds to Wilfredo or Mary Garcia. The second Notice of Levy received, attached as Exhibit 4 to the Amended Complaint, listed as the taxpayer "Servicios Legales de Mesoamerica, as Nominee, Transferee, and/or Alter-Ego of Wilfrido R. Garcia (AKA Wilfredo Rogelio Garcia) and Mary Garcia (AKA Maria de Jesus Garcia)."  After receiving this second notice, Podhurst began holding in trust all disputed funds from the settlement of the Siber Air actions and instituted the instant action.

On October 22, 2009, after receiving notification that the Untied States holds an approximately $800,000 lien interest in the disputed funds that precludes Podhurst from taking any action with respect thereto, Claimants Michael Flanagan, Eloy Sepulveda, and Sean Callagy filed a Petition in Intervention in the Matter of the Marriage of Maria de Jesus

Garcia and Wilfrido Garcia, 449th Judicial District, Hidalgo County, Texas. Claimants Michael Flanagan, Eloy Sepulveda, and Sean Callagy, were and are, upon information and belief, Texas residents who were appointed as Receivers ("Receivers") by the 449th Judicial District, Hidalgo County, Texas in the Matter of the Marriage of Maria de Jesus Garcia and Wilfrido Garcia, Cause F-551-05-K by Order dated October 1, 2009.  The Petition in Intervention filed by the Receivers – which has since been removed to federal court in the Southern District of Texas by the United States, *see* Case No. 10-CV-00012 (S.D. Tex.) ("the Texas federal action") – was brought against Intervenor Defendant Podhurst and Podhurst attorney, Steven C. Marks, requesting an accounting and a court order compelling Intervenor Defendants to deposit all monies owed on matters referred to them by SLM and/or its assignee Baker, Brown, and Dixon, P.C., with the registry of the court. Attached to this Petition of Intervention was a copy of the Order requiring that all money owed to Maria de Jesus Garcia and Wilfrido Garcia and SLM by Podhurst, among others, be deposited with the registry of the Court.  As a result of the competing claims to the funds at issue, Podhurst filed the instant interpleader action and deposited $697,822.07 in its custody into the registry of this Court.  An additional $109,252.39 was deposited into the Court's registry on March 18, 2010.  Podhurst has also moved for a preliminary injunction pursuant to 28 U.S.C. § 2361 that would enjoin the Claimants from instituting or prosecuting any proceeding in any State or United States court affecting the property  **[DE 10]**.[2]  All claimants have received notice and an opportunity to be heard on

---

[2]  Specifically, Podhurst requests that the claimants be "enjoined from instituting or prosecuting any proceedings in any State or United States court that will in any way affect the fees deposited into the registry of the Court and/or that are in any way related to the distribution of attorneys' fees amongst the several Claimants as a result of the settlement of the actions

the issues addressed in this order.

### III.    Analysis[3]

#### A.    The Two Phases of Interpleader Actions

It is well-settled that district courts have broad and significant powers in an interpleader action. *Wachovia Bank, N.A. v. Tien*, 534 F. Supp. 2d 1267, 1285 (S.D. Fla. 2007). Interpleader is designed to protect stakeholders from harassment in the face of multiple claims against the same fund, and to relieve the stakeholder from assessing which claim, among many, has merit. *State Farm Fire & Casualty v. Tashire*, 386 U.S. 523, 534 (1967). The purpose of an interpleader action is to "allow the contesting parties to have their rights determined in a court of equity so as to protect the plaintiff from double liability, and to preserve the rights of any claimant to the fund . . . ." *Johnson v. Johnson*, 139 F.2d 930, 933 (5th Cir. 1943); *see also Center Partners Mgmt., Ltd. v. Cache, Inc.,* 657 F. Supp. 48, 49 (S.D. Fla. 1986). Further, the Supreme Court has stated that the federal interpleader statute "is remedial and to be liberally construed." *Tashire*, 386 U.S. at 533.

An interpleader action typically involves two stages. In the first stage, the district court decides whether the requirements for a rule or statutory interpleader action[4] have been met by determining if there is a single fund at issue and whether there are adverse

---

arising out of the July 9, 2006 crash of Siberia Airlines Flight 778." **[DE 21-1]**.  Several claimants object to this language as overbroad.  *See e.g.,* **[DE 28]**; **[DE 51]**; **[DE 52]**.

[3] "Questions of jurisdiction and procedure [in] federal court interpleader actions are determined by federal law." *Wachovia Bank, N.A. v. Tien*, 534 F. Supp. 2d 1267, 1285 (S.D. Fla. 2007) (citing *Coastal Air Lines, Inc. v. Dockery*, 180 F.2d 874 (8th Cir. 1950)).

[4] Here, Podhurst's primary claim is a federal statutory interpleader claim, with counts for rule interpleader and declaratory relief asserted in the alternative.  *See* **[DE 5]**.

claimants to that fund.[5]  *Star Insurance Co. v. Cedar Valley Express, LLC*, 273 F. Supp. 2d 38, 41 (D.D.C. 2002).  District courts addressing the first phase of an interpleader action may also determine if the stakeholder is disinterested – i.e., makes no claim to the res – and, if so, discharge it from liability and dismiss it from the action.  This practice is particularly common in cases involving competing claims to life insurance proceeds where the interpleading insurers – as disinterested stakeholders – deposit the res into the court's registry and request immediate dismissal from the action (as well as fees and costs incurred in connection therewith).  *See e.g., John Alden Life Ins. Co. v. Vanlandingham,* 2006 WL 1529047 at *5 (M.D. Fla. May 30, 2006) (granting plaintiff's motion for interpleader and fees and noting that plaintiff, as a disinterested stakeholder, was entitled to early dismissal from case with prejudice); *State Farm Life Insurance Company v. Mangan,* Case No. 09-CV-61722-ASG, [DE 26] (S.D. Fla. Feb. 6, 2010) (Gold, J.) (granting motion for interpleader and dismissing disinterested stakeholder from case subject to award of fees and costs); *see also Dunn v. Harris Corp.,* 560 F. Supp. 2d 1260, 1262 (M.D. Fla. 2008) (noting that disinterested stakeholder's motion for interpleader was granted and that stakeholder was entitled to be dismissed from case)*; Wachovia Bank N.A. v. Tien*, Case No. 04-CV-20834-ASG, [DE 449] (June 1, 2006) (Gold, J.) (granting agreed motion for summary judgment as to first phase of interpleader action and discharging disinterested

---

[5] "Although the party seeking to institute an interpleader action bears the burden of demonstrating that the statutory requirements are satisfied, there is no set procedure governing how the court is to resolve" the first phase of interpleader proceedings (i.e., determining the propriety of interpleader and the interest, if any, of the stakeholder).  *See Star Insurance Co. v. Cedar Valley Express, LLC*, 273 F. Supp. 2d 38, 41 (D.D.C. 2002) (citations omitted).  Here, the issues have been formulated via motions and argument, which is one acceptable method of resolution.  *See id.* (noting that first phase questions may be "formulated on motion by the parties, or decided by the court as if presented on a formal motion for summary judgment, either on the papers or after taking evidence.") (citations omitted).

stakeholder); *United States v. Sentinel Fire Ins. Co.,* 178 F.3d 217, 224 (5th Cir. 1950) (noting that "plaintiffs in [an] interpleader suit [can be] dismissed before final decree").[6]

Disinterested stakeholders may also be awarded attorneys' fees and costs for their participation in the cause. *Sentinel Fire Ins. Co.,* 178 F.3d at 236 (noting that "[a]n incident of the equitable remedy of interpleader is the allowance of attorney's fees and court costs to a wholly disinterested stakeholder who brings money or other property into court."). "[A]lthough such awards are within the court's discretion, they are common where the [disinterested] stakeholder has acted in good faith." *Katsaris v. United States,* 685 F.2d 758, 763 (11th Cir. 1982).

B.    *The Propriety of Federal Statutory Interpleader*

A district court's exercise of jurisdiction over a federal statutory interpleader action requires that the following statutory prerequisites be satisfied: (1) the plaintiff must have had in "its custody money or property of the value of $500 or more"; (2) the plaintiff must deposit the money or property . . . into the registry of the court, there to abide the judgment of the court"; and (3) "two or more adverse claimants, of diverse citizenship . . . are claiming or may claim to be entitled to such money or property."  28 U.S.C. § 1335; *see also Star Insurance*, 273 F. Supp. 2d at 41.

Having considered the relevant submissions and the arguments of the parties, I conclude that the aforementioned statutory prerequisites are satisfied in the instant case and that Podhurst, as a disinterested stakeholder, is entitled to be dismissed from this

---

[6] The second stage of an interpleader action consists of a "determination of the respective rights of the claimants" to the property or funds at issue. *Wachovia*, 534 F. Supp. 2d at 1285.

action, subject to its right to file a motion with this Court for reasonable attorneys' fees and

costs.  First, Podhurst has deposited into the registry of the Court funds in excess of $500

that were previously in its custody. **[DE 8]**; **[DE 9]**; **[DE 102]**.  Second, there are competing

claims to the interpleaded funds by adverse claimants of diverse citizenship (e.g., claimant

James Vititoe is a resident of California while claimant Sean Callagy is a resident of

Texas).  *See Tashire*, 533 U.S. at 530 (noting that action under federal interpleader statute

requires only "minimal diversity," that is, diversity between two or more of the claimants).

Third, it is undisputed that Podhurst is not making a claim to the settlement funds at issue

and therefore qualifies as a "disinterested stakeholder" entitled to discharge.  **[Tr. Mar. 17,**

**2010 at 5:35 p.m.]**.  Accordingly, I have subject-matter jurisdiction over the first phase of

this interpleader action and may enter appropriate orders in conjunction therewith.[7]

### C.    Podhurst's Motion for a Section 2361 Injunction

Having determined that the instant case qualifies as "a civil action of interpleader

or in the nature of interpleader under [28 U.S.C.] section 1335," I now turn to Podhurst's

request that I issue an injunction "restraining [the claimants] from instituting or prosecuting

any proceeding in any State or United States court affecting the property . . . involved in

[this] interpleader action."  28 U.S.C. § 2361.[8]

---

[7] Because I conclude that the federal interpleader statute is applicable to the instant action, there is no need for me to reach Counts II and III, which I now dismiss without prejudice as moot. *See* **[DE 89]** (acknowledging "that it may not be necessary for the Court to reach Counts II and III, since Count I for statutory interpleader may resolve the entire dispute over the distribution of fees from the Siber Air accident.").

[8] Even though I will transfer this case to the Southern District of Texas, I am permitted to consider the merits of a preliminary injunction request prior to transfer, so long as I have subject-matter jurisdiction.  *See Integrated Health Servs. v. THCI Company, LLC,* 417 F.3d 953 (8th Cir. 2005) (affirming district court's decision where district judge considered merits of preliminary injunction prior to transferring case from Western District of Missouri to District of

Section 2361 of Title 28 authorizes district courts to enter an order restraining all claimants from instituting a proceeding in any state or federal court affecting the property involved in an interpleader initiated pursuant to Section 1335.  7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1717 (3d ed. 2009). Because the statute does not articulate precise standards for framing a Section 2361 injunction,[9] it has been stated that district courts have "extensive discretion under Section 2361 with regard to the issuance and the scope of the order."  *Star Insurance*, 273 F. Supp. 2d at 42 (quoting 7 Wright and Miller, *Federal Practice and Procedure* § 1717). However, as the Eleventh Circuit has noted, great discretion engenders great responsibility.  *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1264 (11th Cir. 2009).  Thus, district courts issuing Section 2361 injunctions must proceed with circumspection and keep in mind that "any order that does issue, must not be overbroad," should be tailored so as to serve the purpose of the federal interpleader statute (i.e., protection of disinterested stakeholders), and should only "extend to litigation involving the fund that is the subject matter of the interpleader."  *Id.*; *see also Tashire*, 386 U.S. at 535-36 (ruling that Section 2361 could not be used to restrain claims against insured, where the insurer – not the insured – interpleaded the property at issue).

Having considered the facts and circumstances of the instant case and the purpose of the federal interpleader injunction statute, I conclude that a Section 2361 injunction

---

Delaware).

[9] I note that the traditional requirements for injunctions and restraining orders set forth in Federal Rule of Civil Procedure 65(a) do not apply to Section 2361 injunctions.  Fed. R. Civ. P. 65(e); *Aetna Cas. & Sur. Co. v. Ahrens*, 414 F. Supp. 1235, 1242 (S.D. Tex. 1976).

should immediately[10] issue to ensure that Podhurst, as a disinterested stakeholder, is protected from vexatious and multiple litigation. *Tashire*, 386 U.S. at 534 (noting that Section 2361 injunctions are particularly appropriate in cases such as these, "where a stakeholder, faced with rival claims to the fund itself, acknowledges -- or denies -- his liability to one or the other claimants" because "interpleader, in discharge of its office to protect the fund, should also protect the stakeholder from vexatious and multiple litigation."). Accordingly, with the exception of the Texas federal action, all claimants are hereby immediately restrained from instituting or prosecuting any proceeding in any State or other United States court affecting, or determining rights to, the disputed funds at issue in this interpleader action.

### D.    The United States' Motion to Transfer

The last issue I must address is whether this matter should remain here or be transferred to the Southern District of Texas, the locus of the divorce and tax lien litigation that gave rise to many of the competing claims at issue in this interpleader action.[11]

To prevail on a motion to transfer made pursuant to Section 1404(a), the moving

---

[10] While Section 2361 does not specify when such an injunction should issue, there is authority holding that it can be issued in conjunction with an order discharging the disinterested stakeholder. *See Big Lake State Bank v. Morris' Estate*, 202 F. Supp. 115, 118 (N.D. Tex. 1961) (discharging interpleader plaintiff and restraining all proceedings affecting the res upon determination that the requirements of the federal interpleader statute were met).

[11] Of all the parties to this action, only Mr. Louis' Russian clients voiced objections when I inquired as to the parties' respective positions regarding a transfer of the second phase of this interpleader action to the Southern District of Texas. *See* note 1, *supra*. Moreover, it bears mentioning that Mr. Louis expressly noted that he could not "represent to the Court that [his Russian clients] *won't* accept the [transfer to Texas]"; instead, he simply stated that he could not consent to a transfer on the record without first speaking to his Russian clients, who were unreachable at the time due to the 10 hour time difference. **[Tr. Mar. 17, 2010 at 5:46 p.m.]**. No formal consent or objection has been filed on behalf of Mr. Louis' Russian clients as of the date of this Order.

party must show that: (1) an adequate alternative forum is available; (2) the public and private factors weigh in favor of transfer; and (3) the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice. *Leon v. Million Air, Inc.*, 251 F.3d 1305, 1310-11 (11th Cir. 2001). The public and private factors to be considered include:

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n. 1 (11th Cir. 2005) (citations omitted).

### 1.   An Adequate Alternative Forum

There is no dispute that this case could have originally been brought in the Southern District of Texas.  The federal interpleader statute – which I have determined governs the instant action – provides the Texas district court with subject-matter jurisdiction.   In addition, venue is proper there pursuant to the interpleader venue statute in light of the fact that "one or more of the claimants" reside in that district.  28 U.S.C. § 1397; **[DE 5, ¶ ¶ 3, 9, 10, 11]**.[12]

### 2.   Sources of Proof and Convenience of Parties and Witnesses

The principal witnesses in this case will be the competing claimants, while the

---

[12] Service of process is not an issue because: (a) all claimants have already been served, *see* **[DE 86]**; and (b) Section 2361 provides for nationwide service of process.  *See* 28 U.S.C. § 2361.

principal sources of proof will be documents and testimony produced by and elicited from the claimants.[13]  *See* **[DE 24]**.  Of the named claimants, at least eight – i.e., Wilfrido Garcia, Maria Garcia, Baker Law Firm PC, Sean Callagy, Michael Flanagan, Eloy Sepulveda, Newton B. Schwartz, Benton Musslewhite – are located in Texas.[14]  *See* **[DE 5]**.  On the other hand, none appear to be located in this district.  *Id.*  Additionally, claimant United States – although not domiciled in Texas, *see Foster v. United States*, 768 F. 2d 1278, 1284 (11th Cir. 1985) – has repeatedly articulated its firm belief that Texas is a more convenient forum for this action.  *See* **[DE 47]**.  Accordingly, these three factors strongly weigh in favor of a transfer to Texas.

### 3.    The Locus of Operative Facts

The operative facts giving rise to the numerous competing claims are too varied and disjointed to have an obvious locus.  Accordingly, this factor neither favors nor militates against a transfer to Texas.

### 4.    Availability of Process to Compel Unwilling Witnesses

As to the availability of process to compel unwilling witnesses, the parties have failed to identify any witnesses that would be unwilling to testify, either via deposition or at trial, if this matter were to be transferred to the Southern District of Texas. Accordingly, this factor has no bearing on the prudence of a transfer.

---

[13] Stakeholder Podhurst, a resident of this district, may also be a source of proof. However, it indicated at oral argument that it does not oppose a transfer of the second stage to Texas, and that it is willing and able to provide the claimants with any and all evidence relevant to the second phase of this interpleader action.

[14] The others are located throughout the world, from Russia to California, with no particular locus.

5.      The Relative Means of the Parties

With the exception of Podhurst – which no longer opposes a transfer – none of the parties have suggested that a transfer to Texas would impose an undue burden upon them, or that the means of the parties should significantly impact my Section 1404(a) analysis.  To the contrary, it has been suggested that transferring this matter to Texas would *reduce* the financial burden on most of the parties involved, especially the individual claimants, most of whom reside in Texas and are already participating in related litigation there.  *See* **[DE 47]** (noting that "costs will be less after the transfer, as the parties will no longer be forced to litigate two related actions in separate courts").  Accordingly, this factor weighs in favor of a transfer to Texas.

6.      The Forum's Familiarity with Governing Law

Although it is unclear at this stage which law will govern the second phase of the interpleader action, the parties agree that – at the very least – the second phase of this interpleader action is "factually and legally interwoven with the [pending] Texas litigation," **[DE 47, p. 3]**, and that unique questions of Texas community property and receivership law may play a role in adjudicating the competing claims to the interpleaded funds.  *See* **[DE 24, p. 7]**; **[Tr. Feb. 2, 2010 at 5:33 p.m.]**.  I conclude that my colleagues in the Southern District of Texas are better equipped to address such issues.

7.      Weight Accorded Plaintiff's Choice of Forum

While I recognize that "[a] defendant invoking forum non conveniens ordinarily bears a heavy burden in opposing the plaintiff's chosen forum," *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007) (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255-56 (1981)), these considerations carry little weight in an interpleader suit such as

this one, where the Plaintiff is nothing more than a disinterested stakeholder entitled to an early discharge from the action.  Because of its entitlement to immediate dismissal, Podhurst's interest in keeping this suit in this district is virtually non-existent and thus does not militate against transferring this action to Texas.

   8.   Trial Efficiency and the Interests of Justice Based on the Totality of the Circumstances

As I noted at oral argument, the totality of the circumstances leads me to conclude that the various requests to transfer this matter to the Southern District of Texas are well-founded for a number of reasons, many of which are set forth above.  However, in addition to the aforementioned factors, I note that I am particularly persuaded by the United States' argument that the tax lien issues raised in connection with this action are so intricately intertwined with claims and funds already at issue in the Texas litigation that it would make no sense, as a matter of judicial economy, for these matters to proceed on a piecemeal basis in two different district courts.  **[DE 47, p. 3]** (noting that claimants "Wilfrido Garcia and SLM are both owed fees in addition to the interple[aded] funds, meaning that those additional claims must be litigated in Texas in any event.").

   9.   Reinstatement of Plaintiff's Suit

The final element of a Section 1404(a) transfer analysis is whether the Plaintiff can reinstate the lawsuit in the alternative forum without undue inconvenience or prejudice. *Perez-Lang v. Corporacion De Hoteles, S.A.*, 575 F.Supp.2d 1345, 1353 (S.D.Fla. 2008). None of the parties addressed this issue in their papers, but there is no indication that the second phase of this interpleader action would in any way be precluded from proceeding in the Southern District of Texas.  In light of the fact that most of the relevant factors weigh

strongly in favor of transferring this matter to the Southern District of Texas, the United States' motion to transfer will be granted.

**IV.   Conclusion**

Based on the foregoing, I conclude that the requirements set forth in the federal interpleader statute are met and that the issuance of a Section 2361 injunction is warranted given the facts of circumstances of this case.  Further, because Podhurst is a disinterested stakeholder, I dismiss Podhurst from this action, subject to its right to seek reasonable attorneys' fees and costs incurred in connection with the first phase of this interpleader action.  Finally, I agree with the claimants that this case should be transferred to the Southern District of Texas in the interests of justice and therefore grant the United States' motion to transfer.

Accordingly, it is hereby

ORDERED AND ADJUDGED that

1.     Podhurst's Motion for Preliminary Injunction **[DE 10]** is GRANTED.

   a.     With the exception of the Texas federal action, all claimants are hereby IMMEDIATELY restrained from instituting or prosecuting any proceeding in any State or other United States court affecting, or determining rights to, the disputed funds at issue in this interpleader action.

2.     Podhurst is DISMISSED FROM THIS ACTION WITH PREJUDICE, subject to its right to request reasonable attorneys' fees and costs incurred in connection with the filing and prosecution of the first phase of this interpleader action.

16

3.    Podhurst shall have **until and including March 26, 2010 at 5:00 p.m.** to file a motion for attorneys' fees and costs in compliance with S.D. Fla. L.R. 7.3(B).

    a.    Claimants shall have **until and including March 30, 2010 at 5:00 p.m.** to respond to Podhurst's motion for fees and costs, should Podhurst choose to file one.

    b.    Failure to timely file a compliant motion for fees and costs – or response in opposition thereto – will be construed as a waiver of any entitlement – or opposition – to an award of fees and costs.

4.    The United States' Motion to Transfer this Action to the Southern District of Texas **[DE 47]** is GRANTED.

    a.    A separate order directing the clerk to transfer this action to the United States District Court for the Southern District of Texas will issue upon resolution of any issues regarding Podhurst's attorneys' fees and costs.

5.    Should Siber Air settlement funds in excess of $500 to which there are – or may be – two or more adverse claimants of diverse citizenship subsequently come into the possession, custody, or control of Podhurst, Podhurst may file an interpleader action naming all potential adverse claimants, deposit said funds into the registry of the Court, and concurrently file a Motion for Interpleader and Dismissal of Disinterested Stakeholder.

    a.    Upon receipt of any such funds, Podhurst is ORDERED to provide notice to the claimants in this action – via certified and electronic mail

17

– identifying the amount of the funds, their source, and whether they relate to any of the claimants named in this action.

      b.     Any claimant that wishes to receive said notice at an address other than the address currently reflected on this Court's docket <u>must</u> provide Podhurst with written notice of the mailing address at which they wish to receive said notice(s).

6.     Nothing in this order shall be construed as passing any judgment regarding the question of whether Podhurst is subject to personal jurisdiction in the State of Texas.

7.     Counts II and III of the Amended Complaint **[DE 5]** are DISMISSED WITHOUT PREJUDICE AS MOOT.

DONE AND ORDERED in Chambers at Miami, Florida this 22nd day of March, 2010.

_____
THE HONORABLE ALAN S. GOLD
UNITED STATES DISTRICT JUDGE

cc:
Magistrate Judge Chris McAliley
Counsel and parties of record

18